UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ANGELA DORTCH, et al.  PLAINTIFFS

v.  NO.3:05-CV-216-JDM

LOREN FOWLER, et al.  DEFENDANTS

**OPINION AND ORDER**

The plaintiffs, Angela Dortch, and others, move *in limine* to exclude evidence of a truck demonstration conducted by a defense expert witness in this motor vehicle, negligence action. The plaintiffs contend the demonstration lacks any probative value and will confuse the jury because of dissimilarities between the demonstration and the collision at issue. For reasons set forth below, the court will permit the defense expert to testify to the demonstration; however, the court will exclude a video and photographs of the demonstration because, in the court's view, the imagery will likely confuse the jury despite effective cross-examination intended to limit the weight of the evidence.

**Background**

The factual dispute in this case is whether the defendant driver, Loren Fowler, negligently crossed the center line of a narrow, two-lane roadway causing a head-on collision with Ms. Dortch's vehicle. Photographs from an official investigation of the scene depict an arced tire mark (post-impact) beginning in the truck's lane of travel. The parties dispute whether the tire mark is attributable to the truck's left or right steer tire. To this inquiry, defense accident reconstruction expert, William Cloyd, is expected to testify that the arced tire mark is traceable to the left tire, placing the truck within its lane of travel at the time of impact.

Mr. Cloyd's opinion is based in part on a videotaped demonstration, which shows the turning radius and tracking of the drive and steering tires of an exemplar truck. The defendants' memorandum explains:

> With the knowledge of the exemplar arc's radius, Mr. Cloyd was able to accurately place it on several scale diagrams of the roadway at issue, which he had created using total station survey data collected at the accident scene. ... The results of the demonstration show that the tractor's *left* front steer tire tracks *between* the two sets of rear dual tires when the exemplar truck is in a full left
> turn ... and when compared with the [arced tire mark at the scene, the results] demonstrate that the mark at the scene was of an even shorter (tighter) radius than that of the left front tire of an exemplar truck in a full left turn.[1]

According to the defendants, the demonstration further shows that when the exemplar truck is in a full left turn, the tractor's *right* steer tire tracks *outside* the right rear dual tires of the tractor. Because the impact severely damaged the truck's steering components, Mr. Cloyd extrapolates from the demonstration's results, using mathematical and graphic techniques, the actual truck's turning radius and tracking so as to conclude that the arced tire mark in official photographs is that of the *left* front steer tire, thereby placing the truck in its lane of travel at impact.

**Analysis**

As a general rule, an out-of-court experiment, which supports an expert's opinion testimony, is admissible where the experiment demonstrates a general scientific principle or where the experiment replicates the essential features of a disputed event. If the experiment purports to replicate actual events, the proponent of the evidence must show that the replication and the experiment are substantially similar. The closer the experimental evidence simulates

---

[1] Defendants' response memorandum, docket no. 139 at 4 (emphasis added).

actual events rather than demonstrates a scientific principle, the higher the foundational standard: the experiment and event must be sufficiently similar to provide a fair comparison. GEORGE E. DIX ET AL, MCCORMICK ON EVIDENCE § 202 (6th ed. 2006); 33A FEDERAL PROCEDURE, L. Ed. *Witnesses* § 80.254 (2003).

The plaintiffs object to the admissibility of the demonstration because of several dissimilarities between it and the collision. Among other things, the exemplar truck moved only 1 to 2 miles per hour, on a level parking lot, without pulling a trailer; whereas the actual truck (tractor and trailer) was traveling 30 to 35 miles per hour, uphill, on a left-curving two-lane roadway, carrying a load for delivery. According to the plaintiffs, these dissimilarities are significant because the speed, weight, and incline of the trailer, all can affect the tracking of the tires. Thus, the plaintiffs argue the demonstration has no probative value and will mislead the jury.

The defendants argue the demonstration will not confuse the jury because, as Mr. Cloyd testified in his deposition, the demonstration was not an attempt to replicate the collision; rather, the demonstration merely shows the tracking of an *undamaged* vehicle from which Mr. Cloyd then extrapolates the post-impact tracking of the damaged truck.

The defendants rely on *United States v. Metzger*, 778 F.2d 1195 (6th Cir. 1985), for the proposition that the demonstration need not achieve perfect identity with the actual event. Indeed, authorities generally agree that as long as the evidence assists the jury's understanding of technical or scientific issues, the differences between the experiment and actual event affect the weight, not the admissibility, of the evidence. *See id.* at 1204-06; MCCORMICK ON EVIDENCE, *supra*; FEDERAL PROCEDURE, *supra*.

After due consideration of the defendants' points and argument, however, the court concludes the demonstration falls on a spectrum closer to simulating the collision than to demonstrating the tracking of an undamaged truck. By comparing graphics or photographs of the tracking and turning radius between the exemplar and the actual truck, the purpose of the demonstration, clearly, is to show the actual tracking of the truck after impact.

The pivotal issue, then, is whether the comparison is unfair because of dissimilarities in the demonstration and the collision. A key premise to the plaintiffs' argument is the proposition that tires track differently depending on speed, weight, incline and other factors. In support of this contention, the plaintiffs attach an excerpt from the Traffic-Accident Investigation Manual of the Northwestern University Traffic Institute (9th ed. 1986). In addition, Mr. Cloyd concedes in his deposition testimony the possibility that these factors can affect the tracking of the truck. The defendants counter in their memorandum that Mr. Cloyd will testify that the speed of the truck following the significant collision – at the time the arced tire mark was made – was much lower (but not specified) than the pre-impact speed of low-thirties. But if speed alone, for example, could shift the tracking of the right steer tire in a full left turn to a point between (rather than outside) the rear dual tires, comparison photographs and video of the crawling-speed demonstration are of little assistance to the jury's understanding of which steer tire made the arced tire mark in the official photographs. These concerns argue against admissibility of the demonstration.

On the other hand, the plaintiffs do not say with knowledge or information that a higher-speed or more similar demonstration would show a shift in the tracking of the steer tires. As an unknown, this point is subject to dispute – a matter which, therefore, affects the weight of the

-4-

demonstration and Mr. Cloyd's opinion. Clearly, the experts cannot safely replicate the collision or, for that matter, a similar-speed left turn, with a loaded trailer, on a similar incline and curve of the roadway. (Significant improvements to the roadway were made shortly after this collision.) But a jury may well find the testimony about the demonstration useful, even if accorded lesser weight, from the standpoint of understanding Mr. Cloyd's opinion and his comparison of how the truck would track in certain conditions.

Again, the court must determine whether the dissimilarities are so substantial that the proper remedy is exclusion of evidence of the demonstration. Reported decisions within this judicial circuit are unavailing on the specific facts of this case. The court finds instructive, however, the case of *Fusco v. General Motors Corp.*, 11 F.3d 259 (1st Cir. 1993). There, the federal appellate court affirmed the trial court's exclusion of the manufacturer's test track replication of a single-vehicle accident. The plaintiff claimed, and the jury accepted, that the vehicle suddenly veered off the roadway due to a defect (a broken "ball stud") in the steering system. The manufacturer appealed the exclusion of the demonstration on the ground that as a demonstration of general scientific principles, the dissimilarities between the staged and actual events affected the weight, not the admissibility, of the demonstration. The appellate court observed that "it would be great stretch" to label the tapes "an abstract demonstration." *Id.* at 264. Instead, the appellate court disagreed and stated that the critical question was not one of labels, but whether the "demonstration is sufficiently close in appearance to the original accident

to create the risk of misunderstanding by the jury ... ." *Id.* The appellate court explained:

> The problems raised by demonstrations of this kind are interesting and important. The test track replication shown on the driving tapes ... is vivid and pertinent: one sees, in a way that no words could capture, the tire wheel flip out of alignment and the tire then dragging on the track. The impression left is that such an accident would leave a tire streak, as claimed by General Motors, and that the car is more likely to flop and drag than to veer sharply off the road. A lay juror, asked whether a look at the tapes would be helpful, would likely answer yes. ...
>
> Where [a] recreation could easily seem to resemble the actual occurrence, courts have feared that the jurors may be misled because they do not fully appreciate how variations in the surrounding conditions ... can alter the outcome.

*Id.* at 263-64 (internal quotations and citations omitted) (citing *Swajian v. General Motors*, 916 F.2d 31 (1st Cir. 1990) and 1 J. STRONG, MCCORMICK ON EVIDENCE § 202 (1992)).

The appellate court concluded the "demonstration was rife with the risk of misunderstanding" and was thus properly excluded. *Id*. at 264. The appellate court reasoned, "Whatever [the plaintiff's] counsel or experts said to the jury about differing circumstances, the drama of the filmed recreation could easily overcome the logic of the distinctions." *Id.*

The court finds this reasoning persuasive. Here, the images of the video and comparison of the photographs, and the weight to accord them, are not susceptible to cross-examination in the same way as testimony. This demonstrative evidence creates an impression that the demonstration closely replicates actual events, despite significant dissimilarities. Thus, the court concludes that the potential for confusion from the video and photographs outweighs their probative value. The defense expert may, nonetheless, testify to the demonstration and explain to his peril under cross-examination the dissimilarities and any affect they may have on his analysis, conclusions and opinions.

**Conclusion**

In summary, the court will exclude the video and photographs of the demonstration but permit testimony concerning the demonstration (without the aid of the video or photographs).

The court being sufficiently advised,

**IT IS HEREBY ORDERED** that the plaintiffs' motion in limine to exclude evidence of truck demonstration (dn 129) is **GRANTED in part** consistent with this opinion.

DATE:

cc: Counsel of Record